UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARATOGA RESOURCES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2270 |
| | § | |
| AMERICAN INTERNATIONAL GROUP, INC. | § | |
| and LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

AMENDED[1] MEMORANDUM OPINION AND ORDER

Pending before the court are (1) cross motions for summary judgment filed by plaintiff Saratoga Resources, Inc. ("Saratoga") (Dkt. 18) and defendant Lexington Insurance Company ("Lexington") (Dkt. 19); and (2) a motion to strike filed by Lexington (Dkt. 22).  Having considered the motions, related documents in the record, and the applicable law, the court is of the opinion that Saratoga's motion for summary judgment (Dkt. 18) should be DENIED, Lexington's motion for summary judgment (Dkt. 19) should be GRANTED, and the motion to strike (Dkt. 22) should be GRANTED.

I. BACKGROUND

This is a dispute about the amount of a deductible in an insurance policy.  Lexington issued Inland Waterways Policy No. 035826027 (the "Policy") to Saratoga with a policy period of May 18, 2012 through May 18, 2013.  Dkt. 1 & Ex. 1.  The Policy was underwritten by Lexington.  Dkt. 1. The Policy insured various oil and gas properties owned by Saratoga.  *Id.*  Hurricane Isaac made landfall in Louisiana on August 28, 2012, and caused extensive damage to several of Saratoga's

---

[1]  This amendment changes two minor nonsubstantive matters in the factual recitation.

insured properties.  Dkt. 1.  Saratoga made a claim for $3,085,047.39 in damages.  *Id.*  The insurer

had an adjuster inspect the damage.  *Id.*  After deductions for damages that the adjuster determined

were not related to the hurricane and $912,500 for the deductible, Lexington paid $2,001,191.28 to

Saratoga.  *Id.*  Saratoga disagreed with the manner in which Lexington calculated the deductible, as

it asserts that the deductible should be $400,000, not $912,500.  *Id.*  Saratoga filed this lawsuit

seeking a declaratory judgment that its interpretation of the Policy's terms relating to the deductible

are correct and that Lexington is in breach of the Policy because it did not tender the complete

amount due under the Policy.

The portion of the Policy setting forth the deductible states:

> **Deductible**:  Each claim for loss or damage under this policy shall be
> subject to a per occurrence retention amount of **$125,000** unless a
> specific deductible shown below applies:
>
> **Earth Movement/Flood Named Windstorm**:
> 5% of Total Insurable Values at the time and place of the loss, subject
> to a minimum of **$250,000** any one occurrence
>
> If two or more deductible amounts apply to a single occurrence, the
> total to be deducted shall not exceed the largest deductible applicable
> unless otherwise stated in the policy.

Dkt. 1, Ex. 1 at Oil and Gas Well Lease Property Form ("All Risks") Declarations.  The Policy also

states the following:

> 2.       **DEDUCTIBLE**:
>
> It is understood and agreed that each claim (including claims under
> the Sue and Labor Clause) shall be reported and adjusted separately
> and from the amount of each claim the sum of (**SEE
> DECLARATIONS**) shall be deducted.
>
> For the purpose of this Clause each occurrence shall be treated
> separately, but it [is] agreed that a sequence of losses or damages
> from the same occurrence shall be treated as one occurrence[.]

2

*Id.* The Policy defines "occurrence" as follows:

> **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating **cause** and includes all resultant or concomitant insured losses.  The **occurrence** must occur during the policy period.
> If more than one event for Wind & hail, Named Storm, Riot Strike Or Civil Commotion, Vandalism & Malicious Mischief, **Earth Movement**, **Flood** or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence**. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

*Id.*

Lexington interprets the deductible provision as unambiguously requiring the insured to pay 5% of the total insurable values of each damaged property, added together, which it calculated to total $912,500.  Dkt. 19.  Saratoga contends that the Policy unambiguously prohibits any deduction exceeding the "largest applicable deductible" and that the deductible should be calculated to be 5% of the value of the property with the highest total insured value—Grand Bay, which is valued at $8,000,000.  Five percent of $8,000,000 leaves a deductible of $400,000.  Dkt. 18.

Since both parties contend the deductible provision is unambiguous, they filed a stipulation that their initial cross motions for summary judgment would address only arguments that the policy is unambiguous or that, if the court deems it ambiguous, that one party or the other should prevail as a matter of law.  Dkt. 19, Ex. A.  Lexington and Saratoga have both filed their initial motions for summary judgment.  Dkts. 18, 19.  Lexington also moves to strike extrinsic evidence upon which Saratoga relied in its response to Lexington's motion for summary judgment.  Dkt. 22.  These motions are all ripe for consideration.

## II. Motion to Strike

Lexington moves to strike extrinsic evidence Saratoga cites in its response to Lexington's motion for summary judgment, arguing that (1) reliance on extrinsic evidence is improper when the policy is unambiguous; and (2) the parties agreed in their joint discovery case management plan ("JDCMP") not to rely on extrinsic evidence for their initial cross motions for summary judgment. Dkt. 22. The extrinsic evidence at issue is reports by Lexington's adjuster, Braemar Adjusting. Dkt. 21, Exs. A, B. In the JDCMP, the parties agreed that they would both argue that the policy's deductible provisions were unambiguous and that they would reserve evidence as to intent with respect to the deductible provisions until after the court ruled on the initial cross motions for summary judgment. *Id.*; Dkt. 17. They also filed a stipulation to this effect. Dkt. 19, Ex. A.

Saratoga argues that (1) the reports, which were clearly created after the policy was effective, do not violate the stipulation or the JDCMP because they are not offered to show intent; (2) Lexington opened the door to the evidence by referring to the reports in its original motion and Saratoga should be able to offer the reports in response; and (3) Saratoga must refer to the reports to correct factual misstatements in Lexington's motion for summary judgment. Dkt. 23.

The court finds that the manner in which Braemar Adjusting calculated the deductible is immaterial to the court's consideration of the meaning of the insurance contract. Accordingly, Lexington's motion to strike is GRANTED.

## III. Motions for Summary Judgment

### A.    Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id.*  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

5

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

The questions presented to this court for summary judgment require interpretation of the terms of the Policy.  Since insurance policies are contracts, they are construed using ordinary rules of contract interpretation. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828,831 (Tex. 2009).  The primary goal of construction is to give effect to the parties' intent as reflected in the terms of the Policy. *Id.*  The Policy must be read as a whole, and effect must be given to all parts if possible. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).  Unambiguous language must be enforced as it is written. *Don's Bldg. Supply v. One Beacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008).  Language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Id.*  Language is not ambiguous merely because the parties interpret it differently. *Fiess v. State*

6

*Farm Loyds*, 202 S.W.3d 744, 746 (Tex. 2006). Whether a particular provision or the interaction among multiple provisions creates an ambiguity is always a question of law, and ambiguity must be determined by the four corners of the Policy itself without reference to parole evidence. *Page*, 315 S.W.3d at 527. "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Ambiguous insurance policies must be construed in favor of the insured, "especially when dealing with exceptions and words of limitation." *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995) (applying Texas law).

**B.    Analysis**

The court must first determine if the Policy is ambiguous with regard to its deductible provision. The parties agree that the hurricane qualifies as a "named windstorm," so "[e]ach claim for loss or damage" is "subject to a per occurrence retention amount" of "5% of Total Insurable Values at the time and place of the loss, subject to a minimum of $250,000 any one occurrence." Dkt. 1, Ex. 1. If one were to read just this portion of the Policy, then it would appear that the deductible would be the sum of 5% of the insured values of each property damaged, since "total insurable values" is plural.[2] However, the contract must be interpreted as a whole, so the next portion of the deductible provision also must be considered. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("The court is bound to read all parts of a contract together to ascertain the agreement of the parties."). The very next paragraph indicates that when two or more "deductible amounts" apply to a single occurrence, **"**the total to be deducted shall not exceed the largest

---

[2] "Total Insurable Values" is capitalized in the Policy, but it is not defined in the "policy definitions." *See* Dkt. 1, Ex. 1 § 17 (Oil and Gas Well Lease Property Form ("All Risks") attach.).

deductible applicable unless otherwise stated in the policy." Dkt. 1, Ex. 1.  Here, the parties do not dispute that there is a single occurrence—the hurricane.  The parties also agree on the amounts of the scheduled values for each damaged property.[3]  They disagree, however, as to whether 5% of the total insurable value of each property is a separate "deductible amount."

Saratoga contends that the second paragraph means that the deductible amounts for each property are separate and that the applicable deductible must be 5% of the total insured value of the most expensive property—Grand Bay. Dkt. 18.  Lexington contends that if one interprets the Policy this way, then the deductibles for each of the other damaged properties, which are not as valuable as Grand Bay, would have been less than the $250,000 minimum deductible, and Saratoga would not have been eligible for coverage of the damages to those properties at all.  Dkt. 19.  Lexington states that it instead added the values of all the properties, regardless of the amount of damage each property sustained, to arrive at a single deductible of $912,500.  *Id.*  According to Lexington, this method benefitted Saratoga and is the only reasonable interpretation of the deductible provisions.  *Id.*  In the alternative, Lexington contends that the Policy is ambiguous and that, in light of the parties' stipulation not to submit extrinsic evidence at this time, the court must deny summary judgment and allow the parties to conduct discovery as to the actual intent of the parties.  *Id.*

---

[3]  Although not part of the policies attached by Saratoga and Lexington to their motions, the parties agree that the "scheduled values" of the insured properties which were damaged are:

| | |
|---|---|
| Grand Bay | $8,000,000 |
| Breton Sound 18 | $2,000,000 |
| Breton Sound 32 | $3,500,000 |
| Main Pass 25 | $2,000,000 |
| Main Pass 46 | $500,000 |
| Main Pass 52 | $2,000,000 |
| Breton Sound 51 | $250,000 |

Saratoga argues that Lexington's interpretation that many of the damaged properties would be ineligible for coverage is unreasonable. Dkt. 21. Saratoga points out that the $250,000 minimum threshold is on a *per occurrence* basis, not a *per property* basis. There is no dispute that there was only one occurrence here. Additionally, Saratoga argues that if the court deems the contract to be ambiguous, it should grant summary judgment in Saratoga's favor, as ambiguities in insurance contracts must be construed in favor of the insured. *Id.* Lexington argues that (1) the rule that the court must construe the contract against the insurer does not apply if both parties are sophisticated under the "sophisticated insureds exception"; and (2) even if the rule did apply, it applies only after the court considers extraneous evidence of intent. Dkt. 19.

The court finds that the contract is not ambiguous because only one interpretation gives meaning to all parts of the contract. Saratoga's interpretation that 5% of the insurable value of each damaged property is a "deductible amount" and that the total deductible cannot exceed 5% of the highest valued property is not reasonable. The preceding paragraph in the Policy indicates that one must consider the "*total* insurable values." If the phrase "two or more deductible amounts" in the next paragraph means taking 5% of two or more properties to arrive at two or more deductible amounts, the use of the word "total" in the phrase "total insurable value*s*" would have no meaning. There also would be no reason to use the plural noun "values." Courts must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A reasonable interpretation that takes the entire writing into account is that "5% of total insurable values" means a 5% of the total, or sum, of the insurable values of each damaged property. The term "total insurable values" contains the word "total" and it is a plural phrase, both of which indicate that more than one value is included. If the phrase is interpreted this way, it does not conflict with the

next paragraph, which provides instruction when "two or more deductible amounts" apply, because a plain reading of this section indicates that different *types* of deductibles may apply, as opposed to different deductibles for each property.  For instance, both a named windstorm deductible and a deductible for fire damage could apply, as a fire and named windstorm could be part of the same "occurrence" under the Policy's definition of that term.  Since all the provisions may be harmonized using this interpretation and the result is reasonable, the court finds that the Policy is not ambiguous. The deductible is calculated by adding the insurable values of each damaged property and taking 5% of the total.  Accordingly, Lexington's motion for summary judgment is GRANTED and Saratoga's motion for summary judgment is DENIED.

### V. Conclusion

Lexington's motion to strike is GRANTED.  Saratoga's motion for summary judgment is DENIED.  Lexington's motion for summary judgment is GRANTED.  The applicable deductible is $912,500, which is 5% of the sum of the insurable values of each damaged property.  Saratoga's claims against Lexington are DISMISSED WITH PREJUDICE.  The court will issue a final judgment concurrently with this order.

Signed at Houston, Texas on May 21, 2015.

_____
Gray H. Miller
United States District Judge